UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CAROLYN TUCKER,

Plaintiff,

v.

**DECISION AND ORDER**
09-CV-719S

KALEIDA HEALTH
d/b/a BUFFALO GENERAL HOSPITAL,
and HOWMEDICA OSTEONICS CORP.,

Defendants.

## I. INTRODUCTION

Plaintiff Carolyn Tucker commenced this personal injury medical device action by filing a Summons and Complaint in New York State Supreme Court, County of Erie, against Kaleida Health d/b/a Buffalo General Hospital ("Kaleida" or "Buffalo General"), and former defendant, Stryker Corporation ("Stryker").

On August 17, 2009, Stryker removed the action to this Court based on diversity of citizenship. Although Plaintiff and Kaleida are citizens of the same state, Stryker claims Kaleida was fraudulently joined because there is no possibility Plaintiff can state a claim against it. Plaintiff did not move to remand the case or otherwise contest Stryker's stated basis for removal. Thereafter, Plaintiff voluntarily dismissed its claims against Stryker (the alleged device manufacturer) and filed an Amended Complaint naming Howmedica Osteonics Corporation ("Howmedica") in its stead. The Amended Complaint contains the same allegations and claims against Kaleida as did the original complaint. (Docket Nos. 1, 11). Kaleida filed a Motion to Dismiss the Amended Complaint on the same grounds as

briefed by Stryker on removal. (Docket No. 16) Plaintiff has opposed the Motion to Dismiss.

For the reasons that follow, Kaleida is terminated from the action based on fraudulent joinder, and its Motion to Dismiss is moot.

## II. FACTUAL BACKGROUND

The following facts are taken from the Amended Complaint and are accepted as true for purposes of the following discussion.

Plaintiff and Kaleida are both residents of the state of New York for purposes of jurisdiction. (Am. Compl. ¶¶ 2, 3.) Howmedica is a resident of Michigan. (*Id.* ¶ 4.)

Plaintiff underwent right hip replacement surgery at Buffalo General on October 16, 1998. (*Id*. ¶ 5.) She received a four-piece prosthesis, known as a Stryker-Howmedica implant, manufactured by Howmedica and purchased by Kaleida. (*Id.* ¶ 6.) The prosthesis was implanted at Buffalo General and billed to Plaintiff. (*Id*. ¶ 9.)

The femoral head component of Plaintiff's prosthesis failed in February 2003, and was replaced on February 21, 2003. The defective component was sent to Buffalo General's Pathology Department. (*Id*. ¶¶ 9-10.)

Plaintiff's right hip prosthesis again failed in November 2006, and she received a total replacement of all prosthetic components on November 9, 2006. (*Id.* ¶ 11.) The femoral stem component, which had been implanted in October 1998, was fractured completely through. *Id.*

On several occasions thereafter, Plaintiff, through her attorneys, sought from Kaleida all records relating to her surgeries, including full medical records, bills, pathology reports, and the identification, location of, and warranties attached to the prosthetic

devices. (*Id.* ¶¶ 12-14.) Buffalo General produced some, but not all, of the requested information. (*Id.*)

On June 24, 2008, Plaintiff commenced pre-suit discovery to obtain the undisclosed information and to obtain the broken femoral stem component. (*Id*. ¶ 15.) Kaleida was ordered to respond to certain of Plaintiff's requests, but was unable to locate any paperwork regarding the prosthetic components that had been implanted in Plaintiff, or the femoral stem component that was removed. (*Id*. ¶¶ 15-22.)

On the basis of these allegations, Plaintiff asserts claims against Kaleida for breach of warranty (the first cause of action) and spoliation of evidence (the second and third causes of action).

## III. DISCUSSION

As previously mentioned, former defendant Stryker removed this case based on diversity jurisdiction, which Plaintiff did not oppose. Yet, Plaintiff continues to assert her claims against Kaleida, a non-diverse party. At the outset, this Court must consider whether the removal was proper such that it has jurisdiction.

### A. Fraudulent Joinder

Stryker argues that Kaleida, a New York entity, should not be considered in the diversity analysis because, based upon the allegations in the Complaint, there is no possibility Plaintiff can state a claim against it.

To establish fraudulent joinder, a defendant must demonstrate by clear and convincing evidence that there is outright fraud in Plaintiff's pleadings, or that there is no possibility of stating a claim against the non-diverse defendant in state court. *See*

Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 461 (2d Cir. 1998). "The defendant bears the heavy burden of proving this circumstance [and] all factual and legal ambiguities [must be] resolved in favor of plaintiff." Collins v. Flynn, No. 08-CV-59, 2008 WL 3851842, at *3 (W.D.N.Y. Aug. 15, 2008) (citing Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F. 3d 296, 302 (2d Cir. 2004)). The defendant's burden is greater than the requisite burden to dismiss for failure to state a claim. Stan Winston Creatures, Inc. v. Toys "R" Us, Inc., 314 F. Supp. 2d 177, 182-3 (S.D.N.Y. 2003) ("In order to show that a defendant was fraudulently joined to defeat removal, it is not sufficient to argue that the complaint fails to state a claim against that defendant; rather, the removing party 'must demonstrate, by clear and convincing evidence, . . . that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the . . . defendant in state court.'"). If there is a possibility that a right to relief exists under the governing law, fraudulent joinder will not be found. *Id*. at 183 (citation omitted).

In making the inquiry into whether a defendant has been fraudulently joined, courts may look outside the pleadings. *See e.g.*, Pampillonia, 138 F. 3d at 461-62 (looking into affidavits to determine if plaintiff's complaint alleged sufficient factual foundation to support his claim); In re Consolidated Fen-Phen Cases, No. 03-CV-3081 – No. 03-CV-4869, 2003 WL 22682440, at *3 (E.D.N.Y. Nov. 12, 2003); Areseneault v. Congoleum, No. 01-CV-10657, 2002 WL 472256, at *6 (S.D.N.Y. Mar. 26, 2002) (in deciding fraudulent joiner issue, looking outside the pleadings to depositions and other evidence in the record because "[t]he Second Circuit ... has said that, on jurisdictional issues 'federal courts may look outside [the] pleadings to other evidence in the record[.]'") (quoting United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meriden Square,

Inc., 30 F. 3d 298, 305 (2d Cir. 1994)).

Here, the Court will consider all exhibits attached to Plaintiff's Amended Complaint, as well as her attorney's affirmation and exhibits filed in response to Kaleida's Motion to Dismiss. That response addresses only the causes of action based on spoliation of evidence.

**B. Plaintiff has not Stated, and Cannot State, a Breach of Warranty Claim.**

In her first cause of action, Plaintiff alleges that Kaleida purchased from Howmedica a fractured femoral component which it resold to her, thereby passing on an implied warranty that the component was fit for its intended use. (Am. Compl. ¶¶ 24-26.) This Court agrees that, as a matter of law, there are no set of facts Plaintiff can plead relative to the alleged failure of her right hip prosthesis, that would permit her to maintain a breach of warranty claim against Kaleida.

More than a half-century ago, the Court of Appeals of New York held that the nature of the relationship between hospital and patient is that of a service, rather than a sale. Perlmutter v. Beth David Hospital, 308 N.Y. 100 (1954). Thus, a patient's receipt of tangible materials is merely an incidental adjunct to the services performed, and the service provider is not a seller for products liability purposes. *Id.*; *see also*, Weissman v. Dow Corning Corp., 892 F. Supp. 510, 517 (S.D.N.Y. 1995) (citing Perlmutter, 308 N.Y. at 123).

In Probst v. Albert Einstein Med. Ctr., a plaintiff sought to amend her complaint to add claims for breach of warranty and strict products liability against the medical center and a physician on the grounds that they had "sold" her the metal rod that had been

inserted into her back, which rod later fractured. 82 A.D.2d 739 (1st Dep't 1981). Citing Perlmutter, the appellate court reversed the trial court's granting of the motion to amend on the ground that the proposed amendments did not state any valid claim for relief. *Id*.

Since Perlmutter and Probst, courts applying New York law consistently have held that, as a matter of law, hospitals and medical professionals cannot be held liable for a purported "sale" of supplies or devices associated with treatment under a breach of warranty or strict products liability theory. *See*, Weissman, 892 F. Supp. 510 (holding defendant cannot be held liable for medical services incidental to treatment even if the procedure is "cosmetic" rather than health care related); *see also,* Betro v. GAC Int'l, Inc., 158 A.D.2d 498 (2nd Dept. 1990) (third-party defendant physician or hospital was not liable under a theory of breach of warranty and strict products liability since the prescription of a night brace is incidental to medical treatment rather than a "sale" of the device); Goldfarb v. Teitelbaum, 149 A.D.2d 566 (2nd Dept. 1989) (defendant dentist could not be held liable for placing the allegedly defective mandibular prosthesis into plaintiff's mouth since such a service does not constitute a "sale" as required for an action sounding in products liability and breach of warranty).

As in the foregoing cases, Plaintiff's breach of warranty claim is predicated on Kaleida's purported "sale" of the prosthetic components she received during her surgery at Buffalo General. It is clear there is no possibility that a right to relief exists under the governing law with respect to this claim.

**C. Plaintiff has not Stated, and Cannot State, a Claim for Spoliation of Evidence**

In her second and third causes of action, Plaintiff asserts claims for spoliation of evidence based on allegations that Kaleida lost or destroyed the fractured prosthetic component. (Am. Compl. ¶¶ 36, 39.)

New York courts do not recognize an independent tort for spoliation of evidence. *See* Ortega v. City of New York, 9 N.Y.3d 69, 83 (2007) ("We are not persuaded that it would be sound public policy to create a new tort that shifts liability from responsible tortfeasors to [third-party] entities that serve as repositories of evidence that may or may not be relevant in future civil cases.")

In her response to Kaleida's motion, Plaintiff appears to argue that Kaleida's actions were intentional and that, in IDT Corp. v. Morgan Stanley Dean Witter & Co., the First Department recognized a claim for spoliation of evidence in such circumstances. 63 A.D.3d 583 (1st Dept. 2009). However, Plaintiff misapprehends both the circumstances and holding of this case. In IDT, the plaintiff asserted claims for fraudulent misrepresentation and fraudulent concealment against a defendant with which it had a fiduciary relationship and pursuant to which the defendant owed certain duties to the plaintiff. The defendant attempted to avoid the fraud claims by recasting them as non-actionable claims for spoliation. The court rejected the argument, recognizing that the plaintiff had met the pleading standard for its recognized fraud torts against its fiduciary. To the extent Plaintiff seeks to recast her claims here as ones for fraud, no such claim is cognizable on the allegations and documentation presented here.

Next, Plaintiff appears to suggest that Kaleida is distinguished from the Ortega defendant because Kaleida is not a third-party with no connection to the lawsuit. Even were the Court to agree with Plaintiff's proposition—which it does not—such a circumstance would not salvage her claim. Recently, in Hillman v. Sinha, the Second Department declined to recognize a proposed independent tort of first-party spoliation in a case involving the defendant physician's destruction of medical records at a time when he allegedly knew or should have known of the need to preserve them for a malpractice suit. 77 A.D. 3d 887, 888 (2d Dept. 2010) (finding no reason to depart from Ortega's conclusion that existing New York remedies are adequate to deter spoliation and appropriately compensate victims).

In sum, even providing Plaintiff every favorable inference, she is unable to state any claim against Kaleida that is recognized under New York law.

## IV. CONCLUSION

Based on the foregoing, former defendant Stryker clearly has shown there is no possibility Plaintiff can state a claim for breach of warranty or spoliation of evidence against Kaleida under New York law. Accordingly, Kaleida will be terminated from this case and its Motion to Dismiss is moot. Upon termination of the fraudulently joined Defendant, diversity jurisdiction exists and the case was properly removed.

## V. ORDERS

IT HEREBY IS ORDERED, that Kaleida Health d/b/a Buffalo General Hospital, which was fraudulently joined in this action, be TERMINATED AS A DEFENDANT.

FURTHER, that Kaleida Health's Motion to Dismiss (Docket No. 16) is DENIED AS MOOT.

SO ORDERED.

Dated: March 30, 2011
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court